FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ MAR 31 2010
P.M.
TIME A.M.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JUAN TORRES,
                Petitioner,

-against-

BRIAN FISHER, Superintendent
Sing Sing Correctional Facility,
                Respondent.
----------------------------------------------------------X

**MEMORANDUM AND ORDER**

06-cv-6579 (SLT)(VVP)

**TOWNES, United States District Judge:**

Juan Torres ("Petitioner") was convicted after a bench trial of attempted murder in the second degree, assault in the first degree (two counts) and reckless endangerment in the first degree. On April 30, 2001, Petitioner was sentenced to definite terms of imprisonment of twenty-two years for the attempted murder and assault convictions and to an indefinite term of two and one-third to seven years' incarceration for the reckless endangerment conviction. The convictions were affirmed on appeal by the Appellate Division in *People v. Torres*, 787 N.Y.S.2d 102 (N.Y. App. Div. 2004). On March 14, 2005, the New York State Court of Appeals denied Petitioner's application for leave to appeal further. *People v. Torres*, 4 N.Y.3d 836 (N.Y. 2005). On January 12, 2006, Petitioner moved *pro se* for *coram nobis* relief in the Appellate Division, arguing that he was denied the effective assistance of appellate counsel. On May 2, 2006, the Appellate Division denied Petitioner's motion for *coram nobis* relief. *People v. Torres*, 813 N.Y.S.2d 308 (N.Y. App. Div. 2006). Petitioner's appeal of the denial of his *coram nobis* motion was denied by the New York Court of Appeals on October 30, 2006. *People v. Torres*, 824 N.Y.S.2d 615 (N.Y. 2006). By *pro se* petition filed December 7, 2006, Petitioner now seeks a writ of habeas corpus under 28 U.S.C § 2254. For the reasons stated below, this petition for habeas relief is denied.

1

## BACKGROUND

On December 16, 1998, Maria Scotti went to Radio City Music Hall with Petitioner, with whom she has been dating for approximately a year. Trial Tr. 41:24-42:11. At approximately 3:30 a.m. on December 17, 1998, Petitioner and Maria Scotti were seen together in a bar called Shannon's Bar on Myrtle Avenue in Queens. *Id.* at 42:13-16. After a while, Maria Scotti left the Bar with Petitioner. At 5:00 a.m., on December 17, 1998, Dominick Verni was driving on Starr Street at Onderdonk Avenue in Queens when he saw the body of a woman, later identified as Maria Scotti, lying under a truck, later identified as Petitioner's, and Petitioner standing next to the truck. *Id.* at 432:18-434:7. Shortly thereafter, the police, fire department and ambulance arrived, finding Maria Scotti unconscious and bleeding extensively from a head wound. Additionally, all her fingernails had been ripped off. *Id.* at 62:14-17, 301:21-23, 302:12-303:2, 310:4-6, 320:3-5, 325:7-10, 331:3.

During the afternoon of December 17, 1998, detectives from the 104th precinct surveilled Petitioner's home at 80-38 Cypress Avenue in Queens, and a late model truck parked in front of the home. *Id.* at 250:8-12. Petitioner was arrested and taken to the 104th precinct. *Id.* at 251:7-11. After Petitioner was given his *Miranda* warnings, he was placed in a line-up, where Dominick Verni identified him as the person he saw and spoke to next to the body of Maria Scotti at Starr Street and Onderdonk Avenue. He also identified Petitioner's truck as the vehicle at that location. *Id.* at 440:10-441:23. The police seized the blood stained boots which Petitioner was wearing when he was arrested, and executed a search warrant on his truck and home. DNA tests comparing a known sample of Maria Scotti's blood to blood recovered from Petitioner established that the blood was Maria Scotti's. *Id.* at 363:25-364:2. Maria Scotti testified at trial that she had no memory of the events of December 17, 1998. *Id.* at 475:8-10. She stated that she

began dating Petitioner in October 1997, and that during the course of their relationship Petitioner was very jealous and had a temper. Although she had no specific recollection of December 17, 1998, Maria Scotti recalled that she had told Petitioner that she just wanted to be friends with him and that he was not happy about that. *Id.* at 475:3-4. The Court now turns to address Petitioner's habeas petition.

## DISCUSSION

### I. Standard of Review

Pursuant to 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a writ of habeas corpus "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2).

A state court decision is contrary to clearly established federal law if the state court applies a rule that contradicts governing Supreme Court precedent or the state court confronts a set of facts that is materially indistinguishable from a Supreme Court decision and arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision is an "unreasonable application" of federal law if the state court's application of governing Supreme Court precedent is objectively unreasonable. *Id.* at 409, 413; *see also Mask v. McGinnis*, 252 F.3d 85, 88-89 (2d Cir. 2001). An erroneous application of federal law is not necessarily an unreasonable one. *Williams*, 529 U.S. at 410-11. Nevertheless, as interpreted by the Second Circuit, "although

[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" *Mask*, 252 F.3d at 89 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

On habeas review, state court factual determinations are presumed correct, and the petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The Second Circuit has noted that "this presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility." *Shabazz v. Artuz*, 336 F.3d 154, 161 (2d Cir. 2003) (citations omitted).

## II. Admission of Evidence of Petitioner's Uncharged Crimes

Petitioner first contends that the state trial court erroneously admitted evidence that he had once ripped the steering wheel out of Maria Scotti's car because such evidence deprived him of his due process right to a fair trial. Petitioner presented this claim to the Appellate Division, which concluded:

> Contrary to the defendant's contention, he was not denied a fair trial when the Supreme Court permitted the People to elicit testimony from the complainant concerning a prior incident in which the defendant, her boyfriend, ripped the steering wheel out of her car during an argument between them. The testimony was probative of the relationship between the complainant and the defendant, which was indicative of the defendant's motive and intent.

*Torres*, 787 N.Y.S.2d at 102. The Appellate Division explained that the probative value of the evidence outweighed its prejudicial effect, particularly since the Supreme Court precluded the People from eliciting any evidence that Petitioner had assaulted or threatened the complainant during the prior incident. *Id.* at 103.

4

It is well established that a writ of habeas corpus based upon a state evidentiary error may be issued only if the petitioner demonstrates that the alleged error violated an identifiable constitutional right and that the error was "so extremely unfair that its admission violates fundamental conceptions of justice." *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir.1998) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). Petitioner must show that the state court's error in admitting evidence of uncharged crimes or bad acts "was so persuasive as to have denied him of a fundamentally fair trial" depriving him of due process under the Fourteenth Amendment. *Collins v. Scully*, 755 F.2d 16, 18 (2d Cir. 1982); *see also Roldan v. Artuz*, 78 F. Supp. 2d 260, 276-77 (S.D.N.Y. 2000); *Copes v. Schriver*, No. 97- 2284, 1997 U.S. Dist. LEXIS 16349, at *8 (S.D.N.Y. Oct. 22, 1997). "In making this due process determination, the Court should engage in a two-part analysis, examining (1) whether the trial court's evidentiary ruling was erroneous under New York State law, and (2) whether the error amounted to the denial of the constitutional right to a fundamentally fair trial." *Grayson v. Artus*, No. 08-0493, 2010 WL 446035, at *10 (E.D.N.Y. Feb. 1, 2010).

Under New York law, evidence of other crimes, wrongs, or acts of misconduct is inadmissible if offered solely to prove criminal disposition, but is indeed relevant and admissible to prove motive, intent, the absence of mistake, identity, or a common scheme or plan. *Id.* Accordingly, as correctly concluded by the Appellate Division, the evidence regarding Petitioner's prior bad acts was properly admitted to explain the nature of the relationship between Petitioner and Maria Scotti, which was indicative of Petitioner's motive and intent. *Torres*, 787 N.Y.S.2d at 102.

Finally, even if the evidence regarding Petitioner's prior bad acts was erroneously admitted, which the Court does not so hold, Petitioner cannot show that the admitted evidence,

5

viewed objectively in light of the entire record, was sufficiently material to deprive petitioner of his constitutional right to a fair trial. *Grayson*, 2010 WL 446035, at *10. First, "judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions." *Harris v. Rivera*, 454 U.S. 339, 346 (1981). Since this was a bench trial, there was a diminished risk that admission of the evidence would have an unduly prejudicial effect on the outcome of the case. Second, in light of the overwhelming inculpatory evidence, it can hardly be said that Petitioner was prejudiced by the admission of the relatively inconsequential evidence that, at some point of time prior to the commission of the instant offense, he had ripped the steering wheel out of Maria Scotti's car. Thus, Petitioner is not entitled to habeas relief based on the admission to evidence of his prior bad acts.

### III. The Weight of the Evidence

Petitioner next argues that the verdict was against the weight of the evidence because the People's case was wholly circumstantial, Maria Scotti had no memory of the crime, there were no other witnesses, and no weapon was found. Def. Supp. Br. at 30-35. The argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas review. *McKinnon v. Superintendent, Great Meadow Corr. Facility*, No. 08-2828, 2009 U.S. LEXIS 25380, at *6 (2d Cir. Nov. 19, 2009). 28 U.S.C. § 2254(a) allows federal habeas review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty." A "weight of the evidence" argument, however, is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5). *Correa v. Duncan*, 172 F.Supp. 2d 378, 381 (E.D.N.Y. 2001); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."). Thus, this Court is precluded from considering this claim.

Nevertheless, Petitioner appears as a *pro se* litigant so the Court will construe his claim as asserting a sufficiency of evidence claim under the Fourteenth Amendment's Due Process Clause, which is based on federal principles and thus cognizable on habeas review. *Brewster v. People*, No. 08-4480, 2010 WL 317919, at *8 (E.D.N.Y. Jan. 21, 2010). *See also Einaugler v. Supreme Court of the State of New York*, 109 F.3d 836, 839 (2d Cir. 1997) (stating that due process prohibits "conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged'") (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). When challenging the legal sufficiency of the evidence in a state criminal conviction, a petitioner "bears a very heavy burden." *Brewster*, 2010 WL 317919, at *8. The petition will be denied if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Flowers v. Fisher*, No. 06-5542, 2008 U.S. App. LEXIS 22569, at *3 (2d Cir. Oct. 21, 2008); *Policano v. Herbert*, 507 F.3d 111, 115-16 (2d Cir. 2007); *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002). "[A] habeas court will not grant relief on a sufficiency claim unless the record is 'so totally devoid of evidentiary support that a due process issue is raised.'" *Sanford v. Burge*, 334 F. Supp. 2d 289, 303 (E.D.N.Y. 2004) (quoting *Bossett v. Walker*, 41 F.3d 825, 830 (2d Cir. 1994)).

In the instant case, Petitioner was convicted of attempted murder in the second degree, assault in the first degree (two counts), and reckless endangerment in the first degree. To establish Petitioner's guilt on the charge of attempted murder in the second degree, the People were required to prove beyond a reasonable doubt that intending to cause the death of Maria Scotti, he attempted to cause her death. *See* N.Y. Penal Law § 110/125.25(1); *see also Smith v.*

7

*Smith*, No. 06-2057, 2008 U.S. Dist. LEXIS 67995, at *41-42 (S.D.N.Y. Sep. 9, 2008). To prove Petitioner's guilt on the charge of assault in the second degree, the People were required to prove beyond a reasonable doubt that "with intent to cause serious physical injury to another person," Petitioner caused such injury to Maria Scotti. N.Y. Penal Law § 120.05(1); *see also Holder v. Perlman*, No. 06-5590, 2009 U.S. Dist. LEXIS 44488, at *8-9 (E.D.N.Y. May 27, 2009). Finally, to prove Petitioner's guilt on the charge of reckless endangerment in the first degree, the People were required to prove beyond a reasonable doubt that "under circumstances evincing a depraved indifference to human life," Petitioner recklessly engaged in conduct which created a grave risk of death to Maria Scotti. N.Y. Penal Law § 120.25; *see also Collins v. Artus*, No. 08-1936, 2009 U.S. Dist. LEXIS 76086, at *33 (S.D.N.Y. May 22, 2009).

To prevail on his sufficiency claim, Petitioner must demonstrate that the state court's decision was either "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," or contrary to, or an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1), (2). Here he has made neither showing. Marie Scotti, the victim's mother, testified that on the night of December 16, 1998, Petitioner and her daughter were going to see a show in the city and that her daughter told her she intended to break up with Petitioner. Trial Tr. 88:16-18, 91:5-11. After spending an evening in Manhattan, Petitioner and Maria Scotti went to Shannon's Bar, according to the testimony of Joseph Abruzzo who saw Petitioner and Maria Scotti inside Shannon's Bar between 3:00 and 4:00 a.m. on the morning of December 17, 1998. *Id.* at 163:19-164:1, 164:6-9. Joseph Abruzzo testified that at some point Petitioner left the bar by himself to get his truck and when he returned, he screamed at Maria Scotti to leave the bar with him. *Id.* at 170:25-171:3, 172:14-173:24. Dominick Verni, a Poland Spring driver, who was on his regular route on the morning

of December 17, 1998, testified that he saw Petitioner standing over Maria Scotti's bloody body at around 5:00 a.m. *Id.* at 432:18-434:7. Later, during a visit to 104th precinct, Dominick Verni identified Petitioner in a line up and also recognized Petitioner's truck, which was then in possession of the 104th precinct, as the truck at the scene of the crime. *Id.* at 440:10-20-441:23. It was entirely proper for the trial court to credit the testimony of the People's witnesses. *Young v. Greiner*, 296 F. Supp. 2d 334, 348 (E.D.N.Y. 2003) (issues of credibility are for the trier of fact to determine, not a federal court on determination of a habeas application); *see also Gruttola v. Hammock*, 639 F.2d 922, 928 (2d Cir. 1981); *United States v. Danzey*, 594 F.2d 905, 916 (2d Cir. 1979); *Manning v. Walker*, No. 99-5747 2001 U.S. Dist. LEXIS 109, at *16-17 (E.D.N.Y. Jan. 3, 2001). Furthermore, DNA from Maria Scotti's blood matched DNA evidence that was found on Petitioner's boots, jacket and truck. *Id.* at 363:25-364:2. In light of this overwhelming evidence, any reasonable trier of fact could have found Petitioner guilty beyond a reasonable doubt.

Contrary to Petitioner's allegations, the fact that the People's evidence against him was entirely circumstantial does not deem the verdict to be against the weight of the evidence. *See United States v. Roldan-Zapata*, 916 F.2d 795, 802 (2d Cir. 1990) ("the [finder of fact] is entitled to base its verdict upon inferences from circumstantial evidence and such evidence need not have excluded every possible hypothesis of innocence"). Moreover, the fact that Maria Scotti had no memory of the crime has no bearing on the issue of sufficiency of the evidence, as the People presented evidence from other witnesses sufficient to sustain its burden of proof. Also unavailing is Petitioner's contention that the fact that the weapon used to beat Maria Scotti was never recovered renders the verdict insufficient. *King v. Mantello*, No. 98-7603, 2002 U.S. Dist. LEXIS 27646, at *51-53 (E.D.N.Y. Nov. 19, 2002) (finding there was sufficient evidence for a

rational finder of fact to convict petitioner of intentional murder, even though the police failed to recover the murder weapon.) Petitioner's remaining contentions that the fact that he had no scratches on his body, while Maria Scotti's fingernails were found at the crime scene, and that the police failed to investigate Mr. Verni as a possible suspect, are baseless and thus fail to support his claim that the verdict was based on insufficient evidence.

IV. Ineffective Assistance of Trial Counsel

Petitioner further contends that he was denied the effective assistance of trial counsel because his attorney opened the door to evidence that had been excluded by the trial court's *Sandoval* ruling,[1] moved to suppress evidence under improper grounds, failed to object to the introduction of evidence recovered from Petitioner's truck and failed to further object to the introduction into evidence of Petitioner's cell phone and pager. Def. Supp. Br. at 36-43. Petitioner's claim of ineffective assistance of counsel was rejected by the Appellate Division, which found that Petitioner was afforded "meaningful representation." *Torres*, 787 N.Y.S.2d at 103. Reasoning that "the defendant failed to demonstrate that there were no strategic or other legitimate explanations for his attorney's alleged shortcomings," the Appellate Division concluded that Petitioner failed to overcome the presumption that "counsel acted in a competent manner and exercised professional judgment." *Id.* (citing *People v. Rivera*, 71 N.Y.2d 705, 709 (1988)).

The Supreme Court held in *Strickland v. Washington*, 466 U.S. 668 (U.S. 1984) that a claim of ineffective assistance of counsel has two components:

---

[1] A *Sandoval* hearing is held, upon a defendant's request, to determine the extent to which he will be subject to impeachment by cross-examination about prior bad acts if he testifies. *Jones v. Artuz*, No. 97-2063, 2002 U.S. Dist. LEXIS 16603, at *9 (E.D.N.Y. Aug. 30, 2002).

10

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687. To establish ineffectiveness, a "defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Counsel is "strongly presumed" to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 689. The Second Circuit has routinely "declined to deem counsel ineffective notwithstanding a course of action (or inaction) that seems risky, unorthodox or downright ill-advised." *Tippins v. Walker*, 77 F.3d 682, 686 (2d Cir. 1996).

To establish prejudice a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In reviewing an ineffective assistance of counsel claim, "judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. In determining whether counsel's deficient performance resulted in prejudice, a crucial weight will be given to strength of the prosecution's case. *Latine v. Mann*, 25 F.3d 1162, 1167-68 (2d Cir. 1994), *cert. denied*, 514 U.S. 1006 (1995). Under § 2254(d)(1)'s deferential standard of review, Petitioner must show that the state court applied a standard other than *Strickland*, or applied *Strickland* in an objectively unreasonable manner. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

1. ***Strickland's* First Component- Trial Counsel's Alleged Deficiencies**
   a. **The *Sandoval* ruling**

Petitioner contends that his counsel was ineffective because he opened the door to evidence that had been barred by the court's *Sandoval* ruling. At the *Sandoval* hearing, Petitioner's counsel successfully argued that, should Petitioner testify at trial, the prosecutor should be barred from questioning him about an April 6, 1998 incident inside Petitioner's father's home during which Petitioner allegedly lost his temper and threw objects at his father, injuring him. The trial court limited the exclusion of this evidence, holding that, if defense counsel decided to present evidence as to Petitioner's calm temper, the People will be permitted to renew their application regarding the introduction of the April 6, 1998 incident. Trial Tr. 21:23-22:12.

During the defense's case, Colleen Spellman, a defense witness, testified to Petitioner's calm, happy, peaceful, and outgoing character. *Id.* 584:11-19. Petitioner's counsel next began to question Spellman about three specific occasions in which she saw Petitioner with Maria Scotti. *Id.* 585:2-586:22. The trial court warned Petitioner's counsel that he was moving beyond the realm of a character witness and counsel elected to proceed with the line of question. Id. 585:11-15. Petitioner's counsel then elicited from Spellman that she never saw Petitioner threaten or act aggressively toward Maria Scotti. *Id.* 585:7-9, 586:19-22. On cross-examination of Spellman, the People were then permitted to question Spellman about the April 6, 1998 incident with Petitioner's father. *Id.* at 591:5-16.

An attorney's election to cause the introduction of evidence "is the kind of tactical decision that courts in the Second Circuit are reluctant to second-guess." *Jeremiah v. Artuz*, 181 F. Supp. 2d 194, 205 (E.D.N.Y. 2002) (finding no basis for an ineffective assistance of counsel claim where defense counsel had decided to elicit the otherwise inadmissible information that petitioner had been adjudicated a youthful offender). Indeed, in this case, although trial

12

counsel's tactics opened the door to the People's questions concerning an incident with his father, he was also able to elicit specific instances of Petitioner's non-violent behavior toward Marie Scotti. Considering the overwhelming evidence against Petitioner, trial counsel's strategy to portray Petitioner as a non-violent person based on specific instances of conduct with the victim was not unsound. Because this strategy was ultimately unsuccessful does not transform it into a deficient performance by counsel. Accordingly, it cannot be said that counsel's performance fell below *Strickland's* standard of reasonableness.

### b. *Moving to Suppress Evidence on Allegedly Erroneous Grounds*

Petitioner next contends that his trial counsel was ineffective for moving to suppress Petitioner's truck on the ground that it was recovered during an illegal search and seizure rather than on the ground that the state had failed to establish a proper chain of custody. Upon Petitioner's arrest, the police seized Petitioner's truck after observing blood stains on it. Brooks Hr'g Tr. 56:14-18. It was driven to 104th precinct's garage, vouchered and held in police custody during Petitioner's trial. *Id.* at 58:19-23. Petitioner's counsel sought to suppress the truck during a *Mapp*[2] hearing held on September 19 and 20, 2000 on the ground that it was improperly seized without a warrant. Trial Tr. 131:17-135:17. The hearing court denied counsel's motion, reasoning that the People clearly established that the police had a probable cause to seize the truck after it was observed at the crime scene and after alleged blood stains were observed outside its passenger door.

Petitioner argues that his trial counsel was ineffective because he failed to object to the admissibility of the truck due to the fact that it had been susceptible to tampering and that the people did not provide an absolute assurance as to the authenticity of the truck. Yet, this

---

[2] A *Mapp* hearing held pursuant to *Mapp v. Ohio*, 367 U.S. 643 (1961) determines whether physical evidence obtained by law enforcement officers against a criminal were properly seized.

13

contention is meritless. One way of authenticating evidence, *i.e.,* proving it is genuine and that it has not been tampered with, is to provide proof of a complete chain of custody. *See People v. Julian,* 41 N.Y.2d 340, 342-43 (N.Y. 1977). Nonetheless, "failure to establish a chain of custody may be excused 'where the circumstances provide reasonable assurances of the identity and unchanged condition' of the evidence." *Id.* at 343 (quoting *Amaro v. City of New York,* 40 N.Y.2d 30, 35 (N.Y. 1977)). The police can hold an item in their continuous control from the moment of seizure to bridge an apparent gap in the chain of custody. *See Julian,* 41 N.Y.2d at 343.

In the instant case, after the police observed blood stains on the vehicle, it was seized and driven to a police garage where it was vouchered and held in police custody. The police had continuous control over the evidence and Petitioner offers no indications that it was tampered with or that it was not his vehicle. A challenge to the evidence based on the chain of custody was thus meritless. Accordingly, the Court concludes that Petitioner's counsel's decision not to object to the introduction of this specific evidence was reasonable under *Strickland. See Duncan v. Griener,* No. 97-8754, 1999 U.S. Dist. LEXIS 348, at *30 (S.D.N.Y. Jan. 19, 1999) (holding that where trial counsel's objection "would have been fruitless[,] the failure to so object is not evidence of ineffective assistance of counsel").

c.     *Failing to Further Object to the Admission of Petitioner's Phone and Pager*

Finally, Petitioner contends that his trial counsel was ineffective because he failed to further object to the introduction into evidence of Petitioner's cell phone and pager. Although Petitioner's trial counsel properly objected to the admission into evidence of Petitioner's cell phone and pager on the ground that they were irrelevant, the trial court found this evidence to be relevant and thus admissible. Trial Tr. 494:16-22. Petitioner, however, argues that his trial

14

counsel should have raised further objection to the admission of this evidence to clarify his position to the court.

Here, given that the trial court had decided to admit Petitioner's cell phone and pager as relevant and "[t]rial courts are given 'broad discretion' in determining the relevancy and admissibility of evidence," *Davis v. Senkowski*, No. 97-2328, 1998 U.S. Dist. LEXIS 22995, at *21-22, (E.D.N.Y. Aug. 6, 1998), Petitioner's trial counsel did not need to further object or clarify his objection to the admission of the cell phone and the pager. Indeed, the trial court qualified her ruling stating that she would admit the evidence on the ground of relevancy, but "the weight to be given it [will] be determined by the Court." Tr. 494:17-22. A trial counsel is not deemed ineffective for failing to make a pointless objection to the admission of evidence which had already been deemed admissible by the court. *McKeehan v. Zon*, No. 05-0454, 2009 U.S. Dist. LEXIS 96964, at *22-23 (W.D.N.Y. Oct. 20, 2009); *see also Duncan v. Griener*, No. 97-8754, 1999 U.S. Dist. LEXIS 348, at *30 (S.D.N.Y. Jan. 19, 1999) (where trial counsel's objection would have been fruitless, the failure to so object is not evidence of ineffective assistance of counsel). In this case, trial counsel had already made one fruitless objection; certainly, the dictates of reasonableness do not require more than one fruitless objection. Accordingly, the Court denies this claim as a basis for habeas relief.

## 2.   *Strickland's Second Component- Prejudice*

Even if Petitioner's trial counsel's alleged deficiencies fell below *Strickland's* standard of reasonableness, Petitioner cannot show any resulting prejudice under *Strickland's* standard of prejudice. After reviewing the record in its entirety, the Court holds that the totality of the evidence properly before the trier of fact was so compelling that there is no reasonable probability or possibility that the outcome of the trial would have been different had trial counsel

acted differently. Indeed, on the night of December 16, 1998, Maria Scotti told her mother that she intended to break up with Petitioner. Trial Tr. 88:16-18, 91:5-11. Joseph Abruzzo saw Petitioner and Maria Scotti inside Shannon's Bar between 3:00 and 4:00 a.m. on the morning of December 17, 1998. *Id.* at 163:19-164:1, 164:6-9. Dominick Verni testified that he saw Petitioner standing over Maria Scotti's bloody body at around 5:00 a.m. *Id.* at 432:18-434:7. Later, Dominick Verni identified Petitioner in a line up and also identified Petitioner's truck at the 104th precinct. *Id.* at 440:10-441:23. Additionally, DNA from Maria Scotti's blood matched DNA evidence that was found on Petitioner's boots, jacket and truck. *Id.* at 363:25-364:2.

Specifically, Petitioner was not prejudiced when his counsel caused the introduction of the April 6, 1998 incident during which Petitioner allegedly lost his temper and threw objects at his father, injuring him. Since the case was not tried by a jury, there was a diminished danger that admission of Petitioner's prior bad acts would have an unduly inflammatory effect. It is unlikely that the judge that had previously excluded the evidence at a *Sandoval* hearing found it to be determinative in establishing Petitioner's guilt. *See Gersten v. Senkowski*, 299 F. Supp. 2d 84, 106 (E.D.N.Y. 2004) (since the case was tried by a judge, there was no danger that admission of uncharged crimes evidence regarding other instances of child abuse and rape committed by petitioner against his daughter would lead to a decision based on collateral matters or because of petitioner's past). Similarly, no prejudice has resulted from trial counsel's attempt to suppress the evidence recovered from Petitioner's truck on Fourth Amendment grounds, or from his alleged failure to object to this evidence based on chain of custody grounds. Since the evidence recovered from the truck was merely cumulative, Petitioner could not have been prejudiced from his counsel's sound strategy. Finally, Petitioner was not prejudiced by his trial counsel's alleged

16

failure to further object to the admission of his cell phone and pager because no proper objection could have affected the outcome of the case. *Kyles v. Whitley*, 514 U.S. 419, 435 (1995).

Therefore, the Court finds that the state court reasonably rejected Petitioner's claim for ineffective assistance of trial counsel. Thus, Petitioner is not entitled to a writ of habeas corpus on this ground.

## V. Ineffective Assistance of Appellate Counsel

Petitioner further contends that his appellate counsel was ineffective for failing to argue that his trial counsel was ineffective for "making up Mr. Torres' defense at the spur of the moment," and for setting forth "three defenses that were completely at odds with each other and that were not supported by the trial evidence." Def. Supp. Br. at 14. Petitioner makes this claim for the first time. Although Petitioner had previously claimed in his application for *coram nobis* relief that he had been denied the right to the effective assistance of appellate counsel, Petitioner failed to inform the state court of the factual and legal premises he now asserts. Then, Petitioner asserted that his appellate counsel was ineffective because neither appellate counsel, the clerk of the court, or the State provided him with a copy of the decision and order of the Appellate Division's decision affirming his conviction, thus depriving him of his right to appeal. In the instant petition, Petitioner argues for the first time that his appellate counsel was ineffective for failing to raise the ineffective assistance of trial counsel claim.

"In general, the exhaustion doctrine provides that a habeas petitioner seeking to upset his state conviction on federal grounds must first have given the state courts a fair opportunity to pass upon his federal claim." *Daye v. Attorney Gen. of New York*, 696 F.2d 186, 191 (2d Cir. 1982) (citing *Picard v. Connor*, 404 U.S. 270 (1971); *Wilwording v. Swenson*, 404 U.S. 249 (1971)). To fairly present his claims to the state courts, a petitioner must have informed the state

courts of both the factual and legal premises of the claims he asserts in the federal court. *Daye*, 696 F.2d at 191. "To reach the merits of [an ineffective representation claim], all of [the] allegations must have been presented to the state courts, allowing them the 'opportunity to consider all the circumstances and cumulative effect of the claims as a whole.'" *Sanford v. Senkowski*, 791 F. Supp. 66, 68 (E.D.N.Y. 1992) (quoting *Rodriguez v. Hoke*, 928 F.2d 534, 538 (2d Cir. 1991)). Since Petitioner never presented this form of his ineffective assistance of appellate counsel claim to the state courts, it is unexhausted.

In any event, this Court may deny claims "on the merits, notwithstanding the failure. . . to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). If the unexhausted claims are "plainly meritless," the Court should dismiss these claims on the merits. *See Williams v. Artus*, No. 08 Civ. 11356, ---- F. Supp. 2d ---, 2010 WL 768885, at *13 (S.D.N.Y. Mar. 8, 2010) (quoting *Rhines v. Weber*, 544 U.S. 269, 277 (2005)).

Petitioner's claim for ineffective assistance of counsel is plainly meritless as he cannot overcome the presumption that appellate counsel's failure to raise the ineffective assistance of trial counsel issue was reasonable. *See Strickland*, 466 U.S. at 687. The three alternative defenses raised by the defense counsel regarding Petitioner's possible intoxication, the possibility that Maria Scotti's injuries were caused by a car accident and the possibility that the police investigation focused mainly on Petitioner, were not "made up" instantaneously and did not contradict each other. As set forth by the Appellate Division, Petitioner received meaningful and competent representation from his trial counsel, *Torres*, 787 N.Y.S.2d at 102, and, thus, appellate counsel could not been found ineffective for his failure to raise a meritless claim. Moreover, Petitioner fails to demonstrate a reasonable probability that the results of the appeal would have been different had appellate counsel argued that the trial counsel was ineffective.

Accordingly, the Court holds that Petitioner's claim is plainly meritless and cannot serve as a basis for a habeas relief.

## VI. Denial of Petitioner's Due Process Right to Seek Leave to Appeal

Petitioner further claims that he was denied his due process right to seek leave to appeal to the New York Court of Appeals and to the United States Court of Appeals for the Second Circuit, because the appellate counsel, respondent and the clerk of the appellate court failed to provide him with the order and decision of denial of his direct appeal. Resp't. Opp. at 74. Nevertheless, On January 3, 2005, Petitioner's counsel filed an application for leave to appeal to the New York Court of Appeals, in which he requested the court to consider all of the issues raised and enclosed copies of the briefs filed in the Appellate Division. Resp't Opp. at 76. After reviewing all of the issues, including those raised by Petitioner in his *pro se* brief, the Court of Appeals denied the application. *Id.* at 77. Thus, Petitioner's contention that he was denied his due process right to seek leave to appeal to the New York Court of Appeals is baseless and is, thus, denied on the merits.

Finally, Petitioner's contention that he was denied his due process right to appeal to the United States Court of Appeals for the Second Circuit has no basis in the law. A defendant has no right to appeal to the United States Court of Appeals from a decision of the Appellate Division affirming a judgment of conviction, though he may file a petition for a writ of habeas corpus. This is exactly what Petitioner has done. Therefore, his claim is baseless and the Court denies it on the merits.

## CONCLUSION

The application for a writ of habeas corpus is denied, and the petition is dismissed. Because petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability.

**SO ORDERED.**

Dated: Brooklyn, New York
    March 31, 2010

                                      SANDRA L. TOWNES
                                      United States District Judge